FILED

JUL 0 1 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ BC _____ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CASE NO. 7:25-cv-1269-BO

| | |
|---|---|
| Matthew Feehan,<br><br>        Plaintiff,<br><br>        v.<br><br>Grand Canyon Education, Inc., and<br>DOE Corporations,<br><br>        Defendants. | **COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, COMMON LAW FRAUD, DECEPTIVE TRADE PRACTICES, CIVIL CONSPIRACY, AND EQUITABLE RELIEF INCLUDING TOLLING FOR FRAUDULENT CONCEALMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, MATTHEW FEEHAN ("Plaintiff" or "FEEHAN"), by and through himself *pro se*, brings this civil action against Defendant GRAND CANYON EDUCATION, INC. ("GCE"), a publicly traded corporation (NASDAQ: LOPE), and DOE CORPORATIONS, whose true names and legal capacities are presently unknown to Plaintiff but are reasonably believed to be affiliates, subsidiaries, agents, or business partners of GCE that participated in, directed, or facilitated the wrongful conduct alleged herein. Plaintiff will amend this Complaint to identify these entities as their identities become known. (Collectively, "Defendants.")

## I.      NATURE OF THE ACTION

1.      Since at least 2018, GCE has orchestrated a deceptive and unlawful scheme to misrepresent its identity and role in the collection of educational debt, including debt purportedly owed by Plaintiff, in order to shield itself from liability under federal and state law while continuing to

1

direct and profit from abusive debt collection practices carried out in the name of Grand Canyon University—a brand and institution fully controlled by GCE.

2.      GCE and its DOE corporate affiliates carried out this scheme with the express knowledge, approval, and coordination of Grand Canyon University, its Officers, and its Counsel, deliberately using the institution's name and public-facing brand as a corporate front to conceal GCE's role as the true party in interest in debt collection activities—thereby misleading Plaintiff, obstructing judicial proceedings, evading regulatory scrutiny, and ultimately facilitating the collection of debts through false representations, fraudulent concealment, and a pattern of racketeering activity.

3.      To execute and profit from its ongoing fraudulent scheme GCE operated behind the facade of "Grand Canyon University" (False Name), presenting itself to the Plaintiff as an independent, not-for-profit academic institution while secretly directing its operations, finances, and debt collection apparatus.

4.      In the 2022, Plaintiff—a veteran of the U.S. Army National Guard—enrolled in GCU's Ph.D. program under the belief that he was attending a legitimate, nonprofit, Christian, veteran-friendly university offering transparent tuition terms and a legitimate pathway to a doctoral degree in Data Analytics. That belief was based not only on GCU's marketing and admissions materials but also on its public accreditation status and not-for-profit designation. Within the first two weeks of enrollment, however, Plaintiff began noticing significant irregularities in his student account. Charges appeared and disappeared with no explanation, and the tuition balance fluctuated wildly without corresponding documentation. The billing lacked any coherent logic, and requests for clarification were met with vague, canned responses.

5.      Recognizing that these inconsistencies were not clerical but systemic—signs of a much deeper financial scheme—Plaintiff immediately and formally withdrew from the program. The

withdrawal occurred well within the federally-protected, regulatory window that shields students from academic or financial penalties when exiting a program early in the term (even through their own choice). As a disabled veteran, Plaintiff was further protected under federal regulations and Departments of Education & Veterans Affairs' policies, which prohibit schools from penalizing early withdrawals or misusing military education benefits (i.e., GI Bill).

6.      GCE, however, disregarded these protections entirely. Instead, it used GCU's name but GCE's infrastructure to initiate collections efforts against Plaintiff, claiming a balance was owed despite his timely withdrawal and the absence of a legitimate debt. Plaintiff would later come to understand that this pattern—misleading students into enrollment, manufacturing unverifiable balances, and then launching coercive collection efforts—was not unique, but a deliberate and profitable aspect of GCE's business model—one, by its own U.S. Security and Exchanged Commission (SEC) admissions, it intends to expand through additional nonprofit university partnerships.

7.      At no point during the admissions, billing, or collections process did GCE disclose that it—not GCU—was the true party in interest. Nor did GCE identify itself as the debt collector or creditor on any of its correspondence. By holding itself out through GCU, GCE intentionally misled Plaintiff depriving him of the ability to make informed financial decisions or seek redress against the proper entity—the same redress exhaustibly legislated across all our Nation's states (e.g., North Carolina Debt Collection Act (the "NCDCA")).

8.      Through this fraudulent enterprise, GCE generated millions of dollars in illicit revenue each year by targeting veteran students like Plaintiff with deceptive enrollment practices and unlawful debt collection tactics—given Defendants know—to a statistical surety—how many Ph.D. students will withdraw or otherwise not complete their programs. These actions violated the

3

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and also constituted unfair and deceptive acts and practices under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1. While presenting Grand Canyon University as the face of its operations, GCE deliberately concealed its true role in an illegal scheme designed to extract money from doctoral students through fraudulent misrepresentations and coercive collection practices. By operating in the shadows and failing to disclose its status as the actual debt collector, GCE evaded regulatory oversight and deprived state attorneys general of any opportunity to investigate or intervene—allowing a publicly traded corporation to engage in unauthorized debt collection activity across multiple jurisdictions without detection.

9.     Defendants have long been aware of the legal restrictions imposed by the Fair Debt Collection Practices Act (FDCPA).

10.     GCE, in its hiring postings for Collection Specialists, sought specialists with experience with the FDCPA.

11.     Defendants also knew how educational institutions can expose themselves to liability when attempting to collect debts under a third-party or loan-servicer arrangement.

12.     Defendants' legal, compliance, and financial aid departments undertook a calculated and systematic effort to train collections personnel and administrative staff in how to craft both internal and external communications in a manner that would conceal the true nature of the debt collection activity. These trainings focused on consistently presenting Grand Canyon University ("GCU")— a nonprofit educational institution—as the originating "creditor," while obscuring the role of Grand Canyon Education, Inc. ("GCE"), a for-profit publicly traded corporation. This was not done haphazardly. Rather, it was the result of a coordinated, well-executed plan developed by

4

GCE's executives and counsel to exploit the "creditor exception" to the Fair Debt Collection Practices Act ("FDCPA") and thereby insulate GCE from liability.

13.     The level of premeditation involved in designing this scheme is truly shocking. It required the deliberate structuring of contracts, letterhead, communication templates, staff protocols, and public-facing materials to create a unified false impression: that GCU, not GCE, was the party to whom the debt was owed. This facade was not merely successful in deceiving the Plaintiff in 2022—it also misled this Court and, later, the United States Court of Appeals for the Fourth Circuit. The success of this scheme speaks to the depth of planning and the presence of the requisite *mens rea*: it was not an administrative error or a matter of regulatory ambiguity, but an intentional effort to deceive regulators, courts, and student-borrowers alike.

14.     As part of this broader scheme, GCE itself directly hires and employs individuals under the title of "Collections Specialist." These individuals perform core collection functions—contacting borrowers, monitoring accounts, and transmitting billing information—yet operate from behind the institutional facade of GCU.

15.     Take Mr. Tanner Freeburg, for example, who, according to the publicly available LinkedIn profile, states that he worked as a "Collections Specialist" for "Grand Canyon Education, Inc" in "Phoenix, Arizona" for "3 years and 4 months." EXHIBIT I.

16.     Mr. Freeburg states he handled "50–100+ inbound and outbound calls per day pertaining to customer accounts." Even taking the lower end—50 calls per day—and assuming an 8-hour workday, this equates to one call every 9.6 minutes, with no breaks, administrative time, or internal communication. At the upper end—100+ calls per day—Mr. Freeburg would be making or receiving over 12 calls per hour, or one call every five minutes. That is physically and cognitively incompatible with legitimate debt "resolution." It leaves no meaningful time for account review,

5

compliance with FDCPA-mandated disclosures (including North Carolina mandated disclosures), dispute documentation, or any of the interactive problem-solving expected of university administrative personnel.

17.    Instead, these numbers paint the picture of a classic boiler-room collections operation, structured around volume—not resolution. Mr. Freeburg's workload did not allow for individualized service or good-faith account reconciliation. It was designed to maximize debtor contact frequency, pressure responses, and accelerate payment, irrespective of the borrowers' rights or circumstances. This is not student support—it is industrial-scale debt collection masked by university branding.

18.    But the implications go beyond call volume. Mr. Freeburg also states that he "exceeded every monthly and quarterly collection goal while in position," confirming that his performance was evaluated on pure recovery metrics, not customer satisfaction or regulatory compliance. He "reported directly to the Director of Accounting," and was "advised in the making [of] policies for [the] department," further suggesting that collections activity at GCE was not incidental but institutionalized. His participation in policy discussions signals a level of organizational integration and authority inconsistent with GCE's claims to be operating merely as a passive servicer or administrative arm of GCU.

19.    Most damning of all, Mr. Freeburg states that he "trained new team members on scripts, company services, and collection strategies." The existence of pre-approved scripts and defined "collection strategies" confirms the presence of a formalized, codified program designed to standardize communications and maximize collections—classic hallmarks of a debt collection enterprise. This directly undermines any argument that communications were ad hoc, student-initiated, or exempt under the FDCPA creditor exception.

6

20.     In sum, Mr. Freeburg's own description portrays an operation driven by aggressive performance benchmarks, hierarchical supervision, internal policy coordination, and standardized debtor contact procedures. These are not the hallmarks of a nonprofit university's administrative office—they are the unmistakable characteristics of a for-profit collections agency operating under the false flag of educational legitimacy.

21.     Worst of all, Mr. Freeburg repeatedly identified himself as an employee of Grand Canyon University—not GCE—despite being employed by GCE and operating from its Phoenix, Arizona headquarters. This misrepresentation was not accidental. As a trained Collections Specialist following company scripts and policies, Mr. Freeburg would have known full well that GCU, as a nonprofit institution, enjoys potential immunity under the FDCPA's "creditor exception." By falsely holding himself out as GCU personnel, Freeburg—and by extension, GCE—engaged in deliberate misrepresentation of identity designed to deceive borrowers into believing they were interacting with a university representative rather than a third-party collector. This practice forms a key part of the fraudulent scheme and demonstrates GCE's intent to manipulate legal classifications in order to evade federal consumer protections.

22.     This was not a case of a rogue employee acting outside the scope of his duties. Mr. Freeburg operated under the direct supervision, direction, and advice of GCE's officers and directors, with full awareness and coordination from GCU. The collaboration between GCU and GCE is made even more troubling by the fact that GCU conveniently offers an upper-level course titled JUS 635: Debt Collection, in which students—including Mr. Freeburg—are trained in how to draft demand letters to debt collectors. EXHIBIT N. The irony is palpable. Mr. Freeburg earned both his Bachelor's degree and MBA from GCU, meaning his educational and professional identity were shaped by the very institution that later deployed him to act, falsely, in its name. This is not

7

coincidence. It is the product of a deliberate pipeline strategy: to recruit from within, groom compliant personnel, and manufacture a controlled narrative that GCE's collectors can deliver—even before they've graduated. The goal was not simply to collect debts, but to obscure liability, script the presentation, and give the operation a veneer of academic legitimacy.



23.    The full job description for GCE's "Collections Specialist" position, publicly posted on employment platforms such as Indeed, further confirms that GCE is not merely offering administrative services to GCU—it is operating a professional, high-volume debt collection enterprise, staffed by individuals specifically trained to target and extract payments from student-borrowers. The posting plainly states that the position is responsible for "the timely collection of GCU's outstanding student accounts," directly tying GCE's employees to debt collection on behalf of the university.

24.    The duties listed are indistinguishable from those of a traditional third-party debt collector. They include:

> a.    Processing account adjustments and credit memos,

8

    b. Resolving customer discrepancies and short payments,

    c. Monitoring and maintaining delinquent accounts,

    d. Enlisting management to accelerate collection efforts,

    e. Providing weekly and monthly reports on collections activity, and

    f. Meeting delinquency reduction goals for all assigned accounts.

25. Even more damning, GCE explicitly requires applicants to have "1–3 years of corporate collections experience, preferably in a high-volume environment," and "**knowledge of the Fair Debt Collections Practices Act**"—a federal law that applies only to debt collectors. There is no plausible reason to seek FDCPA knowledge unless the employer is engaged in conduct covered by the statute.

26. The reason GCE requires its Collections Specialists to possess knowledge of the Fair Debt Collection Practices Act (FDCPA) is not to ensure compliance—but to circumvent it. Familiarity with the statute is used as a tool for avoidance, not adherence. By training employees to understand the boundaries of what constitutes "debt collection" under the law, GCE equips them to exploit legal loopholes—most notably the "**creditor exception**"—and to structure communications, job titles, and institutional affiliations in ways designed to evade regulatory scrutiny while still engaging in the core activities the FDCPA was enacted to regulate. *See Feehan v Grand Canyon University*. This is not risk mitigation; it is tactical evasion, and it underscores the premeditated nature of GCE's scheme.

27. The posting further states that the role "may require evening and weekend hours… to collect debts." In other words, GCE expects around-the-clock collection activity by employees whose sole function is to recover payments for accounts labeled as GCU's.

28.     Finally, the job description emphasizes the importance of "adhering to department and company policies and procedures," and even instructs Collections Specialists to "provide a positive example to students by supporting the University's doctrinal and ethical statements." This co-branding of GCU's religious mission with the debt enforcement functions of a private for-profit collection arm encapsulates the heart of the deception: a sophisticated laundering of commercial debt collection through the institutional credibility—and moral authority—of a nonprofit university. This isn't boilerplate HR language. It's coded instruction. "Supporting the doctrinal and ethical statements" in the context of collection activity serves as clandestine messaging: a directive to align one's collection tactics with GCE's unspoken agenda—one that weaponizes faith-based legitimacy to pressure borrowers into compliance while insulating the GCU (EXHIBITS J-L).



29.     This policy and practice demonstrate that GCU was not only aware of GCE's role as a *de facto* debt collector and servicer, but actively participated in a scheme to obscure that role to shield both parties from liability. At all relevant times, GCU maintained active communication channels with GCE's legal and operations staff and corporate DOE partners, including real-time oversight of student billing disputes, coordinated suppression of debt-related complaints, and integrated technical platforms that blurred the line between creditor and collector.

30.     In fact, GCU's use of GCE staff email addresses, GCE's servers, and offsite GCE personnel for sensitive financial transactions, including calculating alleged debts owed by students, shows a deliberate corporate arrangement between the parties designed to insulate GCE and its DOE corporate partners from regulatory exposure—and to shift unlawful collections activity behind the corporate veil of a nominal nonprofit (which worked very successfully—as the scheme convinced this Court and the Fourth Circuit in *Feehan v Grand Canyon University*). This coordination was not incidental but systemic and strategic, carried out with legal sophistication and with the express goal of maximizing recoveries while minimizing the legal visibility of GCE as the party truly operating the illegal debt-recovery enterprise.

31.     Despite Plaintiff's repeated efforts to hold the correct party accountable—including a fully briefed appeal and a very recently filed Motion for *Rehearing En Banc* before the Fourth Circuit— the case against Grand Canyon University was ultimately dismissed on procedural grounds, not on the merits. Throughout that litigation, Grand Canyon Education, Inc. (GCE), with the explicit knowledge, permission, and active coordination of Grand Canyon University (GCU), knowingly allowed Plaintiff and the federal courts to proceed under a false premise, one that the defendant's deliberately and maliciously created.

11

32. Despite knowing it was the true party in interest, GCE remained willfully silent while its own employee falsely accepted service on behalf of Grand Canyon University. Throughout the prior litigation, GCE knowingly permitted pleadings to be filed and arguments to be advanced in the name of GCU—an entity that was neither legally nor factually responsible for the underlying conduct. This was not a clerical error, nor a good-faith mistake. It was a calculated act of judicial fraud, undertaken with the full knowledge and cooperation of GCE, GCU, their legal counsel (acting in violation of their duties under the applicable Model Rules of Professional Conduct, including Rules 3.3, 4.1, and 8.4), their undisclosed DOE corporate partners, and their shareholders.

33. **Together, Defendants defrauded the Court, obstructed Plaintiff's access to relief, and obtained a jurisdictional dismissal on the pleadings through knowing misrepresentation and the strategic concealment of material facts**. As a direct result of this deception, the Court was denied the opportunity to adjudicate the merits of Plaintiff's claims against the true responsible party—because GCE and its co-conspirators ensured that the truth was never placed before it.

## II.     EQUITABLE TOLLING[1]

34.     The events that give rise to this complaint occurred outside the statutory window typically allowed under the Fair Debt Collection Practices Act (FDCPA). However, the untimeliness of this filing is not the result of Plaintiff's inaction, ignorance, or lack of diligence. Rather, it is the direct and foreseeable consequence of Grand Canyon Education, Inc.'s (GCE's) deliberate effort to conceal its identity, mislead the courts, and obstruct Plaintiff's ability to pursue his legal rights.

35.     In 2023, Plaintiff filed suit against Grand Canyon University (GCU) in the United States District Court for the Eastern District of North Carolina, based on abusive debt collection practices

---

[1] *Scharpf v. General Dynamics Corporation*, No. 24-1465 (4th Cir. 2025)

tied to a purported student loan. From the outset of that litigation, Plaintiff reasonably believed that GCU was the correct entity responsible for the debt collection and the conduct giving rise to the lawsuit. That belief was not just reasonable—it was deliberately cultivated by GCE.

36.      During service of process in *Feehan v. Grand Canyon University*, a GCE paralegal named Stephanie Pearlman illegally accepted service on behalf of the defendant. Ms. Pearlman expressed to the process server that she was employed by Grand Canyon University. In reality, Ms. Pearlman was—and still is—an employee of Grand Canyon Education, Inc.—a legally distinct entity. GCE, by and through GCU-Counsel (in *Feehan v. Grand Canyon University*), allowed its employee to present herself as an agent of GCU, **never corrected the record**, and never disclosed its true role in the debt collection practices being challenged in that action. Throughout the entirety of the case—including appellate proceedings before the Fourth Circuit—GCE, by and through its Counsel—remained silent, never intervening, never disclaiming responsibility, and never taking steps to ensure the truth was known. EXHIBITS M (LinkedIn) and C (Service of Process).

(intentionally left blank—spacing)

13



Ad ···
Start creating better visitor & employee experiences
with Sign-in App

How is your organization signing in
employees?

Upgrade today

**Stephanie Pearlman, PP** · 3rd
Paralegal at Grand Canyon Education, Inc.
Phoenix, Arizona, United States · Contact info
55 connections

◀ Message      + Follow      More

₱₱₱ Grand Canyon Education, Inc.

Phoenix College

**About**

Corporate Paralegal responsible for the maintenance of 75 affiliate entities (corporations, limited liability companies, and limited partnerships) qualified in almost every state and Canadian province. Provide assistance with maintenance of additional 145 entities incorporated and/or qualified in all states and Canadian provinces. Maintenance includes annual board and shareholder minutes, state annual and biennial reports, updating corporate entity database, and research of issues affecting entities. Incorporate, qualify, withdraw and dissolve entities in all states. Assisted with several real estate refinancings and a DIP financing. Assisting corporate group with paperless efforts.

Specialties: entity creation and maintenance

**Activity**
57 followers

**Stephanie hasn't posted yet**
Recent posts Stephanie shares will be displayed here.

Show all activity →

**Experience**

₱₱₱ **Paralegal**
Grand Canyon Education, Inc.
Jul 2018 - Present · 7 yrs 1 mo
Greater Phoenix Area

GCU **Corporate Paralegal**
Grand Canyon University
Apr 2015 - Jun 2018 · 3 yrs 3 mos
Phoenix, Arizona

U-HAUL **U-Haul International**
12 yrs 8 mos

**More profiles for you**

Autumn McCullogh 🅛 · 3rd
General Counsel | Corporate
Governance | Strategic...
◀ Message

Melanie Jones 🅛 · 3rd
Vice President of Legal Affairs,
Litigation & Employment...
◀ Message

Lauren Stagnone · 3rd
Litigation Team Lead
◀ Message

James Gooch, Jr · 3rd
VP & Assistant General Counsel
- M&A and Americas...
◀ Message

David Brown · 3rd
Senior Vice President &
Assistant General Counsel at...
◀ Message

Show all

**People you may know**
From Stephanie's job title

Stephen Bacon ⊘
Government Contracts
Attorney | Bid Protests | CDA...
➕ Connect

37.     Plaintiff proceeded in good faith litigating the matter through multiple stages under the

mistaken but understandable impression that GCU was the appropriate defendant. This confusion

was not the product of negligence or lack of inquiry, but instead outright fraud committed by GCE.

Plaintiff relied on the representations made by GCE's own employee, as well as the consistent and deliberate concealment by GCE throughout the litigation. It was only after the defendant in *Feehan v GCU* published a national press release criticizing the Biden Administration of partisan enforcement under its Department of Education that Plaintiff uncovered evidence confirming that GCE, not GCU, had engaged in the debt collection activities at issue and was using Grand Canyon University's name to avoid dedication and avoid licensing costs associated with debt collection. (See EXHIBIT H).

38.    The damage caused by GCE's misrepresentation and concealment was cataclysmic—as was its plan all along (to use GCU's name and likeness to avoid FDCPA liability). Plaintiff incurred significant costs, both financial and emotional, while pursuing a case that was structured from the start to fail—not on the merits, but because GCE stood silently behind a shell. Both the U.S. Court of Appeals for the Fourth Circuit and the U.S. District Court for the Eastern District of North Carolina, too, were misled. GCE's conduct imposed unnecessary burdens on the courts, resulting in the expenditure of public judicial resources on a matter that was fatally compromised by the Defendant's deception from the outset.

39.    Plaintiff now brings this action against GCE directly—and its corporate collections partners. But for the Defendants' deliberate misrepresentations and calculated silence, Plaintiff would have named the proper party years ago. He would have presented his claims within the statute of limitations. He would have had his day in court—**on the merits**.

40.    GCE should not be permitted to benefit from the fraud it perpetrated against both the Plaintiff and the Judiciary. It orchestrated a legal shell game—presenting Grand Canyon University as the responsible party while quietly controlling litigation strategy, managing key

15

Case 7:25-cv-01269-FL    Document 1    Filed 07/01/25    Page 15 of 44

communications, and concealing material facts from behind the scenes. This strategy did not prevail on the merits; it succeeded through calculated deception.

41.     Accordingly, Plaintiff asserts that the statute of limitations applicable to Count Four – Violations of the Fair Debt Collection Practices Act should be equitably tolled for the entire duration of GCE's concealment. This tolling should extend not only to Count Four, but to any and all causes of action that may be brought, amended, or discovered as a direct consequence of Defendants' fraudulent conduct.

42.     The existence of related litigation against GCE alleging similar concealment and abuse of GCU's nonprofit status—such as *Smith v. Grand Canyon Education*—reinforces that the scheme at issue here was not novel or accidental. It reflects a deliberate, ongoing strategy of deception designed to evade regulatory oversight, frustrate judicial scrutiny, and exploit legal protections not available to GCE in its own name.

43.     Accordingly, Plaintiff moves this Court to take judicial notice—as part of this complaint— of the case management order set by the Honorable Steven P. Logan, United States District Judge, District of Arizona in Relevant Case 2:24-cv-01410-SPL (EXHIBIT O) and the Amended Complaint (EXHIBIT P) filed by the plaintiffs in that case on behalf of a class, of which the Plaintiff is very likely in.

## III.     JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the laws of the United States, including the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*.; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.; and federal equitable doctrines such as equitable tolling and fraudulent concealment.

16

45.     Jurisdiction is also proper under 18 U.S.C. § 1965(a), which authorizes civil actions brought under RICO to be initiated in a United States District Court.

46.     This Court has supplemental jurisdiction over Plaintiff's related state law claims—including common law fraud, civil conspiracy, violations of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1 *et seq*., and violations of the North Carolina Debt Collection Act (NCDCA), N.C. Gen. Stat. § 75-50 *et seq*.—pursuant to 28 U.S.C. § 1367(a), as all such claims arise from the same nucleus of operative facts and form part of the same case or controversy as Plaintiff's federal claims..

47.     This Court has personal jurisdiction over Defendant Grand Canyon Education, Inc. (GCE) pursuant to 18 U.S.C. § 1965(a) and applicable North Carolina long-arm statutes, as GCE conducts business in this District, has contracted with individuals residing in this District, and has committed acts and omissions within this District giving rise to the claims asserted herein.

48.     Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because a substantial part of the events and omissions giving rise to this action occurred in this District, including Plaintiff's receipt of unlawful collection communications. Venue is further proper because GCE transacts business and may be found in this District.

IV.     P̲A̲R̲T̲I̲E̲S̲

49.     Plaintiff, **Matthew Feehan**, is a resident of Sneads Ferry, North Carolina. He is a disabled Army National Guard veteran and has served two tours, one of which was in a combat zone leading infantry soldiers. He enrolled in Grand Canyon University's Ph.D. program in Data Analytics but promptly withdrew after identifying irregularities in the program's financial and administrative

practices. Despite his timely withdrawal and the absence of any valid debt, Plaintiff later received debt collection communications from Grand Canyon Education, Inc.

50.     Defendant, **Grand Canyon Education, Inc. ("GCE")**, is a for-profit, publicly traded corporation incorporated under the laws of the State of Delaware, with its principal executive offices located in Phoenix, Arizona. GCE is listed on the NASDAQ stock exchange under the ticker symbol "LOPE." As a publicly traded entity, GCE is subject to federal securities reporting requirements and maintains significant commercial operations across the United States, including in North Carolina, where it solicits students, administers academic programs through Grand Canyon University, and engages in debt collection activities related to those programs—as a debt collector—**under the false name "Grand Canyon University**."

51.     There is no record of a D/B/A "Grand Canyon University" for Grand Canyon Education.

52.     Defendants, **DOE Corporations (23 in total)**, are currently unidentified corporate entities that comprise the remaining portion of Grand Canyon Education, Inc.'s (GCE's) university partner network—beyond Grand Canyon University. According to GCE's Form 10-K for the fiscal year ended December 31, 2024, approximately 88.9% of its total service revenue was derived from Grand Canyon University, **leaving approximately 11.1% attributed to other institutional partners**. Based on GCE's own SEC filings (see Exhibits A & B, Form 10-Ks for FY2023 and FY2025, SEC File No. 001-34211), they are parties to active master service agreements with GCE and therefore are direct participants in the racketeering enterprise alleged in this Complaint. Plaintiff reserves the right to name these DOE Corporations as additional defendants as discovery reveals their identities and roles within the RICO enterprise.

18



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

Form 10-K

For the fiscal year ended: December 31, 2022
OR

For the transition period from [        ] to [        ]
Commission file number: 001-34211

GRAND CANYON EDUCATION, INC.
(Exact name of registrant as specified in its charter)

2600 W. Camelback Road, Phoenix, Arizona 85017
(Address of principal executive offices, including zip code)
Registrant's telephone number, including area code: (602) 247-4400

Securities registered pursuant to Section 12(b) of the Act:

Trading Symbol(s)
LOPE

## V.     FACTUAL ALLEGATIONS

53.     One of the many collection communications at issue, attached hereto as Exhibit F, is a striking example of the fraudulent practices at the heart of this action. Dated November 1, 2023, and mailed from GCE's principal place of business in Phoenix, Arizona to Plaintiff's address in Camp Lejeune, North Carolina, the letter was drafted, typed, printed, sealed, and mailed by personnel employed by Grand Canyon Education, Inc. (GCE)—not Grand Canyon University. Nevertheless, the letter is conspicuously printed on letterhead bearing only the name "Grand Canyon University," with no disclosure whatsoever that GCE, a for-profit corporation and third-party loan servicer, was the true sender.

54.     The letter opens with the header "Grand Canyon University," and falsely claims that Plaintiff owes a legally enforceable debt in the amount of $2,270.00, which had purportedly been returned from a third-party collection agency as uncollectible. The body of the letter threatens legal enforcement, asserts that the balance "is a legal debt and will be pursued as such," and warns Plaintiff that failure to remit payment by the end of the month would result in his information being reported to the Credit Bureau.

19

55.    This letter contains no FDCPA disclosures, no identification of GCE as a debt collector or loan servicer, no validation notice, and no information about the statutory rights of the consumer. Most egregiously, it is signed simply by the "Collections Department, Grand Canyon University," even though GCU is a nonprofit institution. Of course, the reason GCE illegally signed as GCU is to benefit from its creditor argument—as exhaustively argued in *Feehan v Grand Canyon University*.

56.    Plaintiff asserts that this letter is a deliberate act of impersonation, mailed across state lines by a for-profit corporation (GCE) using the false name of a nonprofit university to coerce payment on a debt that was itself illegally calculated in violation of federal VA regulations and Department of Education withdrawal guidance. The use of university branding, false sender identity, and threats of credit damage—without the disclosures required by the FDCPA—constitutes clear violations of federal law, the North Carolina Debt Collection Act, and the North Carolina Unfair and Deceptive Trade Practices Act.

(intentionally left blank—spacing)



**GRAND CANYON**
U N I V E R S I T Y®

3300 W Camelback Road Phoenix, Arizona 85017

11-1 2023

Collections ID: 517275
Student Number: 20966681

Matthew Feehan
PO Box 9301
Camp Lejeune, NC 28547

Dear Matthew Feehan:

Our records indicate that your account balance of $2,270.00 was recently returned from a collection agency as uncollectible. **At this time your account is EXTREMELY past due.**

**This balance is a legal debt and will be pursued as such.** Please take this opportunity to resolve your balance before further collection action is taken.

**Failure to resolve the balance by the last working day of the month this letter was dated will result in your account information being reported to the Credit Bureau.**

Please contact us immediately at (602) 639-7643 or 1 (877) 272-2931 to find out available options for payment.

Sincerely,

Collections Department
Grand Canyon University

57. In or around August 2022, Plaintiff enrolled in Grand Canyon University's Doctor of Philosophy (Ph.D.) program in Data Analytics. GCU is a private institution operated under the public-facing name "Grand Canyon University," while its back-end operations—including student accounts and billing—are managed by Grand Canyon Education, Inc. (GCE), a for-profit, publicly traded corporation.

58. Within the first two weeks of enrollment, Plaintiff noticed erratic and unexplained fluctuations in his student account balance. The tuition owed appeared to change daily with no supporting documentation. This lack of transparency raised concerns of financial impropriety and possible regulatory violations.

59. Exercising his rights under federal law, U.S. Departments of Education and Veterans Affairs regulations protecting veterans from predatory education practices, Plaintiff promptly

withdrew from the program. He did so early enough to ensure that no tuition would be owed beyond what was covered by his GI Bill.



60.     According to the U.S. Department of Education's official training materials (see Exhibit G), an institution of higher education—or, in this case, an unlawfully operating loan servicer and debt collector, GCE,—is required to perform a post-withdrawal calculation to determine the precise amount of federal student aid funds earned by the student based on the official date of withdrawal. Had GCE or its affiliated third-party debt collectors complied with this federally mandated procedure, the resulting amount chargeable to the Plaintiff would have been zero, as the Plaintiff withdrew after only approximately two weeks of enrollment.

61.     Instead, in a clear effort to maximize profit for its shareholders, GCE—operating illegally in North Carolina without a debt collection or loan servicing license—charged Plaintiff the full value of the alleged overpayment from the U.S. Department of Veterans Affairs (VA), $2,270.00 to be exact. This practice is not permitted under applicable VA regulations and constitutes an unlawful reassignment of institutional liability to the student. Federal law does not allow a university—or, as in this case, an unlicensed third-party servicer—to contract around the statutory

22

and regulatory framework (liability of overpayment) by improperly shifting responsibility for institutional overpayments onto veterans or other protected student borrowers such as Plaintiff.

62.     Grand Canyon Education's Collections Staff—operating illegally as "**Grand Canyon University's Student Services team**" initiated collection of Plaintiff's alleged outstanding balance.

63.     Plaintiff has consistently disputed—and continues to dispute—the validity of the alleged $2,270.00 debt, asserting that it represents an unlawful reassignment of institutional liability to the student, in direct violation of both Department of Education and Department of Veterans Affairs regulations. Under 34 C.F.R. § 668.22, when a student who has received Title IV federal financial aid withdraws from a program of study, the institution is required to perform a Return of Title IV Funds (R2T4) calculation to determine the amount of aid earned versus unearned. If the institution is found to have received funds in excess of what the student earned, it is the institution—not the student—that is financially responsible for returning the unearned portion to the federal government. The regulation expressly prohibits an institution from transferring its repayment obligation to the student.

64.     Similarly, in the case of veterans' educational benefits, 38 C.F.R. § 21.9695 governs the handling of Post-9/11 GI Bill (Chapter 33) overpayments. That regulation makes clear that when a veteran withdraws from a course early, the educational institution—not the veteran—is liable for any tuition or fee overpayment, unless the VA explicitly determines that the student engaged in willful misconduct. In this case, Plaintiff withdrew from Grand Canyon University within approximately two weeks of the term's start. His withdrawal was timely under both the university's published withdrawal policy and applicable federal protections for student veterans. No finding of misconduct or ineligibility was ever issued by the VA.

23

65. Accordingly, there exists no legal, regulatory, or factual basis for shifting the institutional debt burden to Plaintiff. GCE's decision to unilaterally reassign that debt and then initiate collection efforts—despite knowing that liability rested solely with the institution—constitutes a willful and fraudulent act. It reflects not mere administrative error but a deliberate scheme to unlawfully extract money from a protected veteran by circumventing both VA and ED regulations. GCE's actions, when viewed in the context of its national debt collection infrastructure, contractual coordination with Grand Canyon University, and financial incentives as a publicly traded corporation, amount to a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, as well as state and federal prohibitions on fraud and unfair debt collection practices.

| **Estimated Value of Defendants' Illegal Debt Collections-Related Activity:** | |
|---|---|
| Students subject to GCE-directed collection efforts annually | $10,000 – 15,000$ |
| Average disputed balance | $4,000 – $6,000 (GCE's disputed balance against Plaintiff: $2,270 USD) |
| Annual unlawful collection volume | $40M – $90M/year |
| If ongoing since 2018 (start of Master Services Agreement) | $200M – $450M total |

## VI.     CLAIMS ASSERTED

### COUNT ONE

24

## USING INCOME DERIVED FROM A PATTERN OF RACKETEERING ACTIVITY TO ACQUIRE AND OPERATE AN ENTERPRISE IN VIOLATION OF 18 U.S.C. § 1962(a)

66.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

67.     This claim is brought under 18 U.S.C. § 1962(a), which makes it unlawful for any person who has received income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income in the acquisition, establishment, or operation of any enterprise engaged in, or the activities of which affect, interstate commerce.

68.     Defendant GCE is a publicly traded Delaware corporation with its principal place of business in Phoenix, Arizona. At all relevant times, GCE was engaged in interstate commerce and operated a network of for-profit services for institutions of higher education, including billing, loan servicing, account management, marketing, and student debt collection.

69.     GCE maintained and expanded this network through a centralized and vertically integrated enterprise built, at least in part, with income derived from illegal and fraudulent activities. These activities included the deceptive reassignment of institutional debt to students, the unlawful collection of that debt in violation of federal and state statutes, and the concealment of GCE's role in these transactions through misrepresentation and abuse of process.

70.     GCE received and invested income derived from a pattern of racketeering activity, including, but not limited to, the following predicate acts under 18 U.S.C. § 1961(1):

71.     **Mail Fraud** in violation of 18 U.S.C. § 1341, by transmitting false balance statements and billing notices through U.S. mail;

72.     **Wire Fraud** in violation of 18 U.S.C. § 1343, by using email, SMS, and electronic student portals to demand payment of false or inflated balances;

73.     **Obstruction of Justice** in violation of 18 U.S.C. § 1503, by interfering with federal litigation through misrepresentation to a process server to evade service;

74.     **Witness Tampering** under 18 U.S.C. § 1512, by misleading and harassing Plaintiff (during litigation (in *Feehan v. Grand Canyon University*) and misleading process servers regarding GCE's corporate role and obstructing judicial review;

75.     **Multiple Violations of the Fair Debt Collection Practices Act (FDCPA)**, 15 U.S.C. § 1692 *et seq*.

76.     **Multiple Violations of the North Carolina Debt Collection Act (NCDCA)**, N.C. Gen. Stat. § 75-50 *et seq*., (GCU is not a licensed debt collector, nor is it a licensed loan servicer in North Carolina).

77.     **Fraud and Deceptive Trade Practices under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA)**, N.C. Gen. Stat. § 75-1.1 et seq.

78.     These predicate acts were not isolated incidents but part of a continuing pattern of illegal conduct directed by GCE against Plaintiff and others. The conduct spanned multiple years, multiple mediums, and crossed state lines.

79.     GCE knowingly reinvested the income from these unlawful acts into:

80.     The expansion of its account management and receivables infrastructure;

81.     The development of automated student portal systems used to transmit deceptive bills and payment demands;

82.     The financing of further marketing, enrollment, and collection contracts with partner universities;

83.     Retaining litigation counsel and legal infrastructure to shield itself from liability while furthering the unlawful enterprise. **This same litigation counsel, in coordination other GCU**

26

**senior staff, GCE officers, and for-profit DOE corporate partners knowingly advised GCE not to come forward in *Feehan v. Grand Canyon University* despite full and complete knowledge of the suit through the service of GCE paralegal Stephanie Pearlman**.

84.     This use and reinvestment of racketeering income permitted GCE to further entrench its enterprise, continue profiting from unlawful practices, and avoid regulatory and judicial scrutiny by masking its role behind the nominally independent identity of Grand Canyon University.

85.     Plaintiff, Matthew Feehan, was directly injured in by reason of this § 1962(a) violation, including but not limited to:

> a. Financial injury from being falsely assigned a $2,270.00 debt and illegal reporting of false negative information to Plaintiff's credit bureaus.
>
> b. Out-of-pocket expenses related to legal research, certified mail, and attempted dispute resolution;
>
> c. Severe emotional distress and deterioration of health resulting from unlawful collection attempts that spanned, relentless phone calls (using different phone numbers so they could never be blocked), emails from "GCU Counselors" and letters—all means of scaring, intimidating, and harassing a disabled veteran into repeated psychological collapses.
>
> d. Obstruction of statutory rights and access to federal protections for veterans;
>
> e. Obstruction of access to federal court due to GCE's misrepresentations and concealment of its corporate identity.

86.     Plaintiff seeks compensatory damages, treble damages, costs of suit(s) both Feehan v. Grand Canyon University and Feehan v. Grand Canyon Education, Inc., *et al*, and any other relief deemed just and proper.

27

87.    Further, should discovery reveal that attorneys acting in concert with GCE, Grand Canyon University, or any of their affiliated corporate partners had actual or constructive knowledge of this litigation prior to the expiration of the statute of limitations applicable to Plaintiff's claims under the Fair Debt Collection Practices Act (FDCPA), and nonetheless failed to disclose the correct party-in-interest or willfully allowed misrepresentations to persist before the Court, Plaintiff reserves the right to move for sanctions.

88.    Specifically, Plaintiff will request that the Court conduct an evidentiary hearing pursuant to its inherent authority and applicable ethical rules, including Model Rule of Professional Conduct 3.3 (Candor Toward the Tribunal) and Rule 8.4 (Misconduct), to determine whether disqualification, disciplinary referral, or other appropriate relief is warranted.

## COUNT TWO

## CONDUCTING THE AFFAIRS OF A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. § 1962(c)

89.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

90.    This claim arises under 18 U.S.C. § 1962(c), which prohibits any person employed by or associated with an enterprise engaged in interstate commerce from conducting or participating in the enterprise's affairs through a pattern of racketeering activity.

91.    Defendant Grand Canyon Education, Inc. (GCE) is a "person" within the meaning of 18 U.S.C. § 1961(3) and is employed by or associated with an "enterprise" as defined under 18 U.S.C. § 1961(4).

92.    The enterprise is an association-in-fact composed of:

- GCE,

- Grand Canyon University,

28

- In-house and contracted legal counsel acting on behalf of GCE and/or GCU—to **include paralegal staff operating outside of their employment and conducting unauthorized practice of law on behalf of the enterprise**,

- Any undisclosed corporate partners or affiliates referenced in GCE's SEC filings who participated in, benefited from, or enabled debt servicing or collection operations, i.e. DOE Corporations.

93. This enterprise has a common purpose: to extract revenue through the administration, enforcement, and collection of educational debts, including those improperly reassigned to students—particularly veterans—after withdrawal, in violation of federal law and regulatory safeguards.

94. GCE participated in the conduct of this enterprise by directing, managing, or otherwise facilitating:

- The improper reassignment of institutional debts to student accounts without authorization or legal basis;

- The omission or falsification of balances, withdrawal adjustments, or VA liability assignments;

- The transmission of false or misleading account statements through email, mail, and student portals;

- **The concealment of its true role in litigation by impersonating a separate nonprofit entity (GCU), thereby obstructing judicial process**;

- The initiation of unlawful debt collection activities without proper licensing in North Carolina or compliance with applicable disclosure and validation requirements.

29

95.     GCE's conduct includes a pattern of racketeering activity within the meaning of 18 U.S.C.

§ 1961(5). This pattern consists of at least two acts of racketeering activity within a 10-year period,

including but not limited to:

- Mail Fraud (18 U.S.C. § 1341);

- Wire Fraud (18 U.S.C. § 1343);

- Obstruction of Justice (18 U.S.C. § 1503);

- Witness Tampering and Corporate Misrepresentation (18 U.S.C. § 1512);

- Multiple violations of the FDCPA, including:

o   False, deceptive, or misleading representations,

o   Unfair or unconscionable means to collect a debt,

o   Failure to validate debt,

o   Furnishing deceptive forms,

o   Abusive conduct;

o   Using a false name to collect debt

- Multiple Violations of the North Carolina Debt Collection Act, including:

o   Failure to disclose identity of creditor

o   Threatening legal action not permitted by law

o   Debt Collection without legal a right or license

o   Using a false name to collect debt

o   Fraud and Deceptive Trade Practices

96.     The predicate acts were related, continuous, and part of a broader scheme to extract

unlawful payments, conceal liability, avoid judicial scrutiny, and maximize profit.

97.     The enterprise affected interstate commerce, as it involved communications, transactions, and business relationships that crossed state lines, including the unlawful collection of debts from Plaintiff in North Carolina by a corporate entity based in Arizona with operations in multiple states.

98.     As a direct and proximate result of Defendant's violation of § 1962(c), Plaintiff has suffered injury to his business and property, including but not limited to:

a.     The assignment and collection of a debt not legally owed,

b.     The impairment of his credit and financial security,

c.     Emotional and physical distress,

d.     Litigation costs and delay caused by obstruction,

e.     Loss of access to veterans' protections and fair billing rights.

99.     Plaintiff seeks compensatory damages, treble damages pursuant to 18 U.S.C. § 1964(c), attorneys' fees, costs of suit, and all such relief the Court deems just and proper.

## COUNT THREE

## CONSPIRACY TO CONDUCT A RICO ENTERPRISE IN VIOLATION OF 18 U.S.C. § 1962(d)

100.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

101.     This claim arises under 18 U.S.C. § 1962(d), which prohibits any person from conspiring to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c).

102.     Defendant Grand Canyon Education, Inc. ("GCE"), together with Grand Canyon University ("GCU"), third-party debt collectors, affiliated legal counsel, and other corporate partners ("DOE Corporations"), formed an enterprise and knowingly agreed to facilitate and expand its operations through unlawful means, including violations of federal and state law.

31

103. **One key objective of this conspiracy was to engage in unlicensed loan servicing and debt collection activities in the State of North Carolina**. At all times relevant, GCE and its co-conspirators were aware of North Carolina's legal requirements for licensure as: a **student loan servicer** and a **debt collector**.

104. Rather than register, disclose, or otherwise comply with these licensure requirements, GCE and its agents intentionally elected to operate without a license, avoiding:

- Regulatory oversight;

- Consumer complaint procedures;

- Public disclosure of their collection activities; and

- Associated compliance costs.

105. This decision was not accidental or based on legal ambiguity. It was a deliberate cost-avoidance strategy, internally rationalized as a way to maximize profitability and preserve shareholder value, as evidenced by:

- GCE's representations in SEC filings regarding its reliance on tuition receivables and collection revenues;

- The consistent absence of North Carolina debt collection registration in public records despite engaging in active recovery efforts in the state;

- The attempted-contractual reassignment of institutional obligations to students in a manner inconsistent with ED and VA regulations.

106. These acts were carried out in coordination with other members of the enterprise, who understood and agreed to the broader objective of the scheme: to assign invalid debts, obscure institutional liability, and collect aggressively across multiple jurisdictions—especially from vulnerable populations such as veterans.

32

The conspirators took overt acts in furtherance of this agreement, including:

- Issuing deceptive billing statements;

- Refusing to correct legally invalid debts;

- Providing false information to courts and process servers;

- Engaging in collection activity in North Carolina without proper licensure;

- Using income from unlawful collections to expand operations.

107.    As a direct and proximate result of this conspiracy, Plaintiff suffered substantial emotional injuries, including the assignment of a debt not legally owed, damage to his credit standing, mental distress, and loss of legal protections afforded by both state and federal law.

## COUNT FOUR

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

108.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

109.    This cause of action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

110.    At all times relevant, Plaintiff was a "consumer" in that he is a natural person allegedly obligated to pay a debt arising from personal, family, or household obligations—specifically, purported tuition-related obligations to Grand Canyon University, processed and collected by GCE.

111.    The alleged debt was a consumer debt purportedly incurred in connection with Plaintiff's enrollment in a doctoral education program and subsequent withdrawal—well within the statutory and regulatory period for GCE to have any legitimate claim to a VA overpayment.

33

112. Defendant Grand Canyon Education, Inc. ("GCE") qualifies as a "debt collector" under multiple FDCPA definitions, including but not limited to:

a. A person who regularly collects or attempts to collect debts owed or asserted to be owed to another;

b. An entity that receives debt in default;

c. An entity that furnishes deceptive forms suggesting that someone else is the collector (i.e., impersonating GCU to obscure its own liability);

d. An entity acting on behalf of a "creditor" with whom it maintains a financial servicing agreement and is therefore not acting as the original creditor.

113. GCE's collection efforts were not incidental to servicing but constituted core business operations, as shown in SEC filings and its failure to register as a debt collector or loan servicer in North Carolina.

114. GCE violated multiple provisions of the FDCPA, including but not limited to:

a. False or Misleading Representations.

b. Falsely representing the amount and legal status of the debt.

c. Misrepresenting the identity of the party collecting the debt.

d. Using deceptive means to collect a debt.

e. Unfair or Unconscionable Practices.

f. Attempting to collect amounts not expressly authorized by law or agreement

g. Collecting debts known to be invalid post-withdrawal.

h. Failure to Validate Debt.

i. Failing to provide written notice of the right to dispute the debt within 30 days.

j. Failing to cease collection pending validation.

34

k. Failing to cease collection during litigation.

l. Furnishing Deceptive Forms

115. GCE created the false impression that Grand Canyon University was the collector, thereby attempting to evade liability under the FDCPA.

116. Communicating Without Disclosure of Identity.

117. Failing to meaningfully disclose that it was a debt collector attempting to collect a debt;

118. Harassing or oppressively contacting Plaintiff through its student portal and follow-up communications despite legal disputes.

119. GCE acted willfully and knowingly, with actual knowledge of its obligations under the FDCPA and in conscious disregard of Plaintiff's rights, intending to maximize collections and reduce legal exposure by obfuscating its role.

120. As a direct and proximate result of these violations, Plaintiff has suffered:

• Severe emotional distress;

• Loss of financial security and creditworthiness;

• Time and expense spent disputing the debt and pursuing judicial relief;

• Loss of federal protections under ED and VA regulations.

COUNT FIVE

COMMON LAW FRAUD UNDER NORTH CAROLINA LAW

121. Plaintiff incorporates all preceding allegations by reference as if fully set forth herein.

122. Under North Carolina law, fraud requires: (1) false representation of fact; (2) made by another; (3) with knowledge that representation was false when it was made; (4) to induce an

35

individual or business to act or refrain from acting in reliance on the representation; (5) and the plaintiff was damaged as a result of their reliance.

123. As a veteran receiving Post-9/11 GI Bill benefits, Plaintiff reasonably believed—based on VA guidance, ED training manuals, and GCU's own public-facing policies—that no tuition charges would be incurred by him individually due to the short duration of enrollment. VA regulations (38 C.F.R. § 21.9695) and ED rules (34 C.F.R. § 668.22) specifically require the institution to return overpaid funds, not the student, unless the VA makes a willful misconduct determination— something never alleged against Plaintiff.

124. Despite this, Plaintiff later began receiving billing statements, collection notices, and warnings of potential negative credit reporting from Grand Canyon Education, Inc. ("GCE"), deliberately pretending to be GCU. These statements demanded full tuition payments for the entire term—$2,270.00—and contained no explanation of the overpayment rule or Plaintiff's VA protections.

125. Between 2022 and 2024, GCE and its agents (including billing departments and legal counsel) committed multiple affirmative fraudulent acts and omissions, including:

a. Sending billing communications and maintaining a student account balance that reflected no tuition adjustment for early withdrawal;

b. Knowingly assigning institutional liability for overpaid tuition to Plaintiff in direct contravention of federal regulations;

c. Refusing to identify GCE as the true party-in-interest in *Feehan v. Grand Canyon University*, instead directing a GCE paralegal (Stephanie Pearlman) to impersonate a GCU agent to mislead the process server and obscure jurisdiction;

36

d. Withholding material facts about the debt's origination, legal status, and eligibility for adjustment;

e. Continuing to pursue collection activity in North Carolina despite having no license to operate as a loan servicer or debt collector in the state.

126. These misrepresentations and omissions were reasonably calculated to deceive Plaintiff into either:

a. Paying a debt he did not owe;

b. Abandoning legal claims based on the false belief that GCU—not GCE—was responsible;

c. Relying on the misrepresentations for a false dismissal against a false name;

d. Or failing to raise his claims against the correct party (GCE) before the statute of limitations expired.

127. GCE's intent to deceive is clear from:

a. Its impersonation and procedural misconduct during service of process in *Feehan v. GCU*;

b. Its registration as a publicly traded for-profit corporation bound by disclosure rules but which never disclosed its debt servicing activities in NC to the proper authorities;

c. Its role in creating the illusion that it was simply a "partner" or "vendor" of GCU, when in fact it directed and executed all billing, accounting, and debt collection activities.

128. Plaintiff reasonably relied on GCE's omissions and misrepresentations to his detriment:

129. **He did not file suit against GCE initially**;

130. He incurred significant time, legal costs, and adverse decisions in the prior case;

131. He suffered reputational damage and mental distress due to the debt appearing on financial records, in credit systems, and in court dockets;

132.    He was deprived of an early opportunity to contest the unlawful reassignment of liability under VA and ED regulations.

133.    As a direct and proximate result of Defendant's fraudulent acts and omissions, Plaintiff has suffered actual damages, including emotional distress, credit harm, economic losses, and litigation costs. Defendant's conduct was intentional, malicious, and in conscious disregard of Plaintiff's legal rights, entitling Plaintiff to punitive damages under North Carolina law.

## COUNT SIX

## VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (UDTPA)

134.    Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

135.    The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") prohibits "unfair or deceptive acts or practices in or affecting commerce," including any such act that has the capacity or tendency to deceive.

136.    Defendant GCE, acting individually and in concert with GCU and affiliated co-conspirators, engaged in multiple unfair and deceptive practices, including:

a.      False and Misleading Identity:

b.      GCE presented itself as "Grand Canyon University" through its employee, paralegal Stephanie Pearlman, who falsely accepted service and identified her employer as GCU. This deliberate false naming of the corporate entity deceived Plaintiff and the Court, causing record-breaking legal misdirection and preventing Plaintiff from asserting claims against the actual debtor.

c.      **Fraudulent Billing Demands**: GCE knowingly sent out and maintained billing statements post-withdrawal that failed to include legally mandated R2T4 or VA overpayment adjustments. These statements were false, misleading, and deceptive.

38

d.     **Misrepresentation of Legal Rights**: GCE solicited payment under false pretenses—implying Plaintiff had no right to dispute, while hiding its own status as the collector and disregarding veteran protections under federal regulation.

e.     **Unlicensed Consumer Debt Collection**: GCE deliberately carried out debt collection operations in North Carolina without a license, implicitly misrepresenting to Plaintiff that it had the authority to collect these debts.

f.     **Concealment of Corporate Structure**: GCE maintained secrecy around its ownership, relationship with GCU, and the nature of its business, thereby deceiving Plaintiff into believing that the apparent creditor had legitimate legal authority.

137.     These unfair and deceptive acts were knowingly made, intended to mislead and deceive both Plaintiff and judicial authorities (and successful mislead they most certainly did), and carried a substantial likelihood of causing injury to the public and Plaintiff specifically.

138.     Plaintiff justifiably relied on these deceptive practices, including relying on the false impression that GCU—and not GCE—was initiating debt collection, and believing that all billing was in compliance with federal regulations. This reliance caused Plaintiff to delay legal action and unknowingly expose himself to abusive collection activity.

139.     As a direct and proximate result of these violations, Plaintiff suffered actual damages, including:

a.     Severe mental anguish and emotional distress;

b.     Economic loss in the form of improperly assigned debt;

c.     Loss of legal rights and opportunities;

d.     Legal research fees and direct court expenses incurred as a result of the deception;

e.     Impairment of creditworthiness and other consequential harms.

39

140.    GCE's actions were conscious, malicious, and in blatant violation of state and federal laws, warranting punitive damages and affirming the seriousness of the conduct.

## COUNT SEVEN

## VIOLATION OF THE NORTH CAROLINA DEBT COLLECTION ACT (NCDCA)

141.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

142.    The North Carolina Debt Collection Act ("NCDCA"), codified at N.C. Gen. Stat. § 75-50 *et seq*., prohibits debt collectors and creditors from engaging in deceptive, unfair, or unconscionable collection conduct.

143.    Defendant Grand Canyon Education, Inc. ("GCE") meets the definition of a "debt collector" under N.C. Gen. Stat. in that it:

a.    Regularly attempts to collect, directly or indirectly, consumer debts owed or asserted to be owed to another;

b.    Engages in such activity as part of its primary business operations;

c.    Does not hold a valid North Carolina debt collection license, as required by law for both direct and indirect collection activity;

d.    Operated within North Carolina affecting a North Carolina resident, Plaintiff Matthew Feehan.

144.    GCE also used its relationship with GCU to collect a consumer debt it claimed was owed to it or on its behalf, through misleading statements and concealed billing procedures.

145.    GCE engaged in multiple prohibited acts under the NCDCA, including but not limited to:

a.    **Unlicensed Collection Activity, Strict Liability Violation**. Operating as a loan servicer and debt collector in North Carolina without being registered or licensed. Contacting a North

40

Carolina resident to collect a consumer debt while being **knowingly** out of compliance with licensing requirements.

b.      **False Representations**. Falsely representing the amount and legal status of the debt; Implying Plaintiff owed 100% of tuition despite prompt withdrawal; Omitting disclosures required by federal law and applicable student protections; Suggesting falsely that legal action would be taken or was authorized.

c.      **Use of False Name**. GCE deliberately used the name Grand Canyon University to collect debts, both in written communications and legal process. Paralegal Stephanie Pearlman, acting under GCE's direction, falsely identified herself as working for GCU during service of process—intentionally deceiving Plaintiff and the courts regarding the identity of the true debt collector.

d.      **Collection of Unauthorized Amounts**. GCE attempted to collect amounts that are not permitted by contract or law, including unadjusted tuition following a VA-funded withdrawal protected under 38 C.F.R. § 21.9695 (Liability of Overpayment).

146.    GCE's conduct was willful, knowing, and malicious, and part of a coordinated enterprise to collect inflated tuition debts from vulnerable students, including veterans, while deliberately avoiding North Carolina's statutory oversight and consumer protections.

a.      As a direct and proximate result, Plaintiff suffered:

b.      Severe emotional and psychological harm;

c.      Economic damages and credit impairment;

d.      Litigation delay and cost due to GCE's use of a false name;

e.      Loss of rights under state and federal law.

VII.    **DAMAGES**

41

147.     As a direct and foreseeable result of Defendants' unlawful, fraudulent, and deceptive conduct, Plaintiff has suffered extensive damages—personal, professional, and procedural—that justify both compensatory and punitive recovery. Plaintiff is a former U.S. Army infantry officer and combat veteran who enrolled in Grand Canyon University's doctoral program in Data Analytics. Within two weeks, Plaintiff identified serious irregularities in financial disclosures and promptly withdrew, relying on protections afforded to veterans under federal law. Despite this lawful and timely withdrawal, Grand Canyon Education, Inc. ("GCE")—acting unlawfully as both a loan servicer and debt collector in North Carolina—sought to collect the full amount of VA overpayment, falsely assigning institutional liability to Plaintiff in violation of 38 C.F.R. § 21.9695 and corresponding Department of Education policy.

148.     When Plaintiff attempted to challenge this misconduct through legal action, GCE knowingly concealed its identity, used a GCE paralegal to impersonate Grand Canyon University (EXHIBIT C), and thereby misled a process server and the federal judiciary.

149.     As a result, **Plaintiff initiated and litigated an entire federal case against the wrong party, expending well over twelve months in district court and on appeal to the Fourth Circuit**—including the filing of a complaint, briefing on a preliminary injunction, responding to a motion to dismiss, and submitting a petition for rehearing *en banc*—only to be procedurally dismissed, never reaching the merits. This deception caused not only personal harm to Plaintiff but also imposed substantial costs on the United States judiciary by forcing federal courts to expend time, resources, and labor on a case built on misrepresentations manufactured by GCE's fraudulent concealment.

150.     Plaintiff suffered severe emotional distress, including repeated panic attacks, insomnia, and psychological trauma resulting from the stress of unlawful collection, procedural injustice, and

42

reputational harm. These symptoms were magnified during Plaintiff's preparation for the Bar Exam, which was materially disrupted by the demands of defending against GCE's fraudulently misdirected debt collection activity.

**151.** **Plaintiff demands compensatory damages in the amount of $275,000, which includes mental anguish, economic loss, credit damage, bar exam disruption, and reputational harm.**

152.     In addition to actual damages, Plaintiff is entitled to statutory damages under the Fair Debt Collection Practices Act (FDCPA), the North Carolina Debt Collection Act (NCDCA), and the Unfair and Deceptive Trade Practices Act (UDTPA). These statutes provide for treble damages where misconduct is willful or egregious, and the conduct alleged here qualifies in every respect.

153.     **Further, in light of the extraordinary and malicious nature of Defendants' conduct— particularly the abuse of federal judicial process, impersonation of another entity, operation without required licenses, and deliberate targeting of a veteran—Plaintiff seeks punitive damages in the amount of $1,000,000.** This amount is proportionate to the scope of GCE's for-profit enterprise, supported by their own SEC disclosures, and necessary to deter further abuse.

154.     **In total, Plaintiff seeks $1,275,000 in monetary damages, in addition to equitable relief including a declaratory judgment voiding the alleged debt, permanent injunctive relief barring future collections, tolling of applicable statutes of limitation, and any further relief this Court deems just and proper.**

## VIII. JURY TRIAL DEMANDED

155.     Plaintiff demands a trial by jury on all causes of action so triable.

43

Respectfully submitted this first day of July 2025.

Matthew Feehan, J.D.

429 Crows Nest Lane
Sneads Ferry, NC
Tel. (512) 660.1488
Mfeehan2025@gmail.com

44